Michael Friedberg on behalf of Mr. Bellajaro. Mr. Friedberg, may I make a short, as short as possible, of a statement to both counsel in order to, for the purpose of getting your views. It seems, it seems pretty clear to me from the text of the statutes that the district court has got a jurisdiction under 1421C to review the denial of a naturalization application without regard to the pendency of removal proceedings. However, that doesn't end this question, it seems to me, because the jurisdiction is conferred to review such denial, quote, unquote. That's the statute. And the denial here was on the ground that removal proceedings were pending. And so under 1429, the Attorney General could not consider the naturalization petition. So what I'm proposing for the sake of getting your response is that while the district court did, in fact, have subject matter jurisdiction, it had the power only to review the denial that had been made. And you don't even challenge that denial. I mean, it obviously was correct. What you want is for the court to go beyond that denial and from scratch to decide whether your client is entitled to naturalization or at least to a declaration that he is eligible. In other words, you want the district court to make an advanced determination that he is of good moral character. And my proposal is that the district court can't do that for prudential jurisdictional reasons of ripeness and of the inability to grant any effective relief. Because it has no ability to make the Attorney General do anything until such time as there is a final agency order denying naturalization. Now, I apologize for the length, and I'm sure that our presiding judge will recognize that I've consumed a lot of your time. But I wanted to try to focus my concern for you so I can hear from you on that particular point. Thank you, Your Honor. And I believe your analysis is essentially the analysis in the Pennsylvania Pacarina case, which ---- Well, it's close, and it's quite close to the Sixth Circuit's recent analysis. Exactly. It's very close. Which we have. Both cases are slightly different on their facts. But the analysis is quite close to both. You're right. And we have great reservations regarding the Zayed case, which I can go into a little bit. If the Court would allow, we would like to present our argument. And I can address ---- Well, before I go to that, the reason that we do not agree with this analysis is, number one, I don't think that's what Congress intended. And what did Congress intend? Congress intended for a meaningful review of naturalization denials. There's nothing to review. There's nothing to review. In addition ---- Don't you have a remedy at the end of the day? If the removal proceedings are dismissed, you can file another naturalization petition if that's denied. Then you can take it up on the merits. Right. Isn't that your remedy? Right. But that's a big if. Well, sure. But, I mean, it seems to me what you're attempting to do is to stop the agency removal proceedings. That's clear. That's your objective. And the agency denies it based on the restrictions. I think the district court has jurisdiction. And I'm not sure I put it in terms of rightness. But it's reviewing whether or not the agency appropriately denied it based on the restrictions. And that's the end of the game, isn't it, for this round? Okay. What about more than 50 years of naturalization law giving a naturalization applicant who is in removal proceedings the ability to move the removal court to terminate his proceedings? Well, yes, but that was when district courts were the naturalization authority, which they no longer are. It would be a purely advisory kind of odd intervention for the district court to get into the Act, wouldn't it? There's nothing to review. I mean, that's the bottom line. There is no naturalization decision on the merits to review. Okay. Matter of Cruz. Which was decided under the regime I've just described, where the naturalization court was the one that had the ultimate decision. Therefore, it had the intermediate decision. Was somebody eligible for it, right? Right. What are you asking us to do? What do you want to see happen? We would like you to find that there is a genuine issue of trial by fact, whether our client possesses good moral character, whether he is, therefore, eligible for naturalization. So you want us to find that he's eligible for naturalization? No, Your Honor. No, Your Honor. What do you want us to do? To send the case back to the district court so that our client... So that the district court can do what? As provided in Section 1421C, the district court will give our client a de novo review, make findings of fact and conclusions of law as to his eligibility for naturalization, if I may, Your Honor. And how does the removal proceeding... What happens to the removal proceeding? With that court declaration, we can then file a motion with the immigration court requesting termination of that removal proceeding. Because the court has already found that he's eligible? That he is prima facie eligible. So you're trying to stop the removal proceeding? Exactly. To remove the obstacle to his naturalization. And then who finally is the naturalization authority? The Attorney General. You're trying to bind the Attorney General's hands in that respect with a court decision? Not necessarily. Section 1429, if the court will allow me. The findings of the Attorney General in terminating deportation proceedings or in canceling the removal of an alien pursuant to the provisions of this shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such a person has established the eligibility for naturalization. So in Section 1429, the mechanism to terminate removal proceedings is provided for, and it is not binding on the Attorney General. The fact that the removal proceedings are terminated does not bind the Attorney General. So you're asking us to – I don't quite understand what this is all about. It's some advisory opinion to the Attorney General that the Attorney General doesn't have to pay any attention to. Is that what you're describing? Your Honor. Is that what you're describing? That's been the law. The regulation exists right now. The regulation doesn't exist. It was deleted. No. I beg to differ, ma'am. Section 1239, I have a copy of it right now. It's deleted. Section 1239.2F exists. It's deleted. Pardon? It was deleted in 2004. That's an error. Okay. That's an error. That's fine. It may be, but I didn't – Please have your clerk's check. I did. Actually. I have a copy. So what I'm telling this Honorable Court is there has been law for over 50 years under matter accrues and in the regulations providing for the termination of removal proceedings. Well, there's nothing to – if you're correct, all right, there's nothing to keep you from asking. Pardon? There's nothing to keep you from asking that the removal proceedings be terminated. We did. We all have. Well, okay. Please. My time is up. May I continue answering the Court's questions?  I haven't presented any of my summary, but that's fine. The matter of Mr. Villajaro in his removal proceedings filed a motion to terminate the proceedings. The motion was denied under matter accrues, the 1975 BIA case, which has not been overturned by any court or by the BIA. Matter accrues states that as a precondition for an immigration judge to consider the motion to terminate must be presented with a statement from the Attorney General of prima facie eligibility or a court declaration. Now, clearly, the Attorney General who is attempting to remove this individual is not forthcoming with the statement of prima facie eligibility. We were trying to comply with matter accrues. It's quite clear that an INS regulation cannot confer jurisdiction on a Federal district court. I mean, it's just clear. So if we lack it in the sense of being unable to render an advisory opinion, we lack it. The INS, whatever they say, can't make any difference. Respectfully disagree. You disagree with the proposition that the INS can confer jurisdiction on a U.S. district court? I'm sorry. My disagreement is based upon the statute. Okay. Please. The plain language, we briefed this and you've read our briefs. Yes. The statute clearly limits the Attorney General from considering naturalization applications for applicants who are in removal proceedings. Plain language of the statute does not speak to the jurisdiction of the district court. Section 1421C. I've told you already, I agree with you. We're going back to your initial statement. The question is the scope of the review, or perhaps rightness. But I mean, there was no merits determination here. So the problem is, what's the district court reviewing? It has jurisdictions reviewing the Attorney General's decision denied because the client was statutorily ineligible at the time. And if that is the scope of the review, that's the end of the case, this case. Your argument is, as I take it, is that, no, that's not the scope of review. And, in fact, a district court has the freedom to go beyond that and see whether there's statutory eligibility and then remand it to the Attorney General for consideration of naturalization. That's your position, right? The district court can't confer. As a minimum, Judge Thomas, as a minimum, Judge Thomas, with a court declaration under matter of cruise, we could seek removal. That's the best. A court declaration of what? Declaration that but for. Right. I didn't get to my next step. Then you take it. Right. Then you take it to the next step and ask the removal proceedings to be terminated. That's what you're asking. Is that your argument in a nutshell? How are you going to get there in this case? I mean, this is a very curious case. He was charged with nine counts of felony child molestation. He pleaded guilty to six. Sorry. Pleaded guilty to six. I believe it was three. 1984. So he pleaded guilty to three counts of child molestation. He petitioned for naturalization, but he was a parole violator, so he was arrested. He filed another naturalization application in 1996. It was denied for failure to establish good moral character. The decision cited his abuse of his stepdaughters, his parole violation, his illegal bigamous marriage with an 18-year-old, his failure to pay child support, his criminal conduct, his failure to acknowledge responsibility, his abuse, and the absence of evidence showing reformed character. His naturalization was denied. He didn't appeal it. And you're asking now, how are you going to convince a court with this background? I mean, it was denied once to issue some kind of a prima facie eligibility for naturalization. Your Honor, it's been nearly 20 years since the conviction, and Mr. Bellaharo has lived a law-abiding, unremarkable life. He's worked hard, paid his taxes, put his children through school. He just wants an opportunity. All of those allegations and the conviction are 20 years old. Cases in this Ninth Circuit, Santa Maria Ames states that a person with a criminal record outside the statutory period must be given an opportunity to establish that he's a person of good moral character. The statutory period is five years. Right. But Santa Maria Ames also says you can consider all that stuff, too. And I don't think on remand, Mr. Santa Maria Ames did very well, even though he was given the opportunity to follow the case. Your Honor, Mr. Bellaharo represents a large class of people. If the government can circumvent the review of – we hope he does not represent a large class of people, but go ahead. If there are many naturalization applicants who have old criminal histories, if the government can deny these people the opportunity to show that they've reformed, this is what Santa Maria Ames stands for, that in the naturalization law, Congress intended to allow for reformation and rehabilitation. What you have right now, what this Court is contemplating, is short-circuiting any opportunities for these individuals to have any meaningful review. Well, he did have an opportunity and didn't take it in the denial of the first naturalization petition. Didn't appeal, huh? Well, we would say that the government raced to place him in removal proceedings and should this Court please not forget that this is the second go-around for the government. On the same conviction, Mr. Bellaharo, based upon the relief granted to him by the sentencing court, the judicial recommendation against deportation, was a complete defense under the then-existing law. With that, the immigration judge in 1986 terminated the proceedings. He has a clean record since then, essentially. And the government, in 1999, as soon as they denied his naturalization application, on the basis of his 15-year-old conduct at that time, reinstituted proceedings based upon the same conviction. The res judicata, I guess, is no longer the law of the land. That's why we find ourselves here. Thank you, counsel. We'll hear from the other side. Thank you. Good morning, Your Honors. Patricia Corral Estella, appearing for the United States government. Your Honor, if I could address your earlier statement. That is the alternative argument that the government made in its brief and, of course, Well, sort of. It's a little different, but it's close. And I believe also that the Said court considered the very same line of argument in making the finding that, although the court did have jurisdiction to review under 1421C, its jurisdiction was limited, because what kind of relief could they give Mr. Said if, since they could not order the Attorney General to act or to grant her application? Actually, this case seems to me to be one step. And Said actually made a – made an explicit statement on the fact that there had been a decision on the merits, and the court still said there was no effective relief that could be granted. That's correct, Your Honor. But it did observe what my view is here that I just mentioned. I don't know that's where I'll end up. But my preliminary view is that there is jurisdiction. But the jurisdiction is to review the order of denial. And that the order of denial is simply based on the ground that the Attorney General can't consider the application for naturalization until the removal proceedings are concluded. That's a slam dunk, because that obviously was a correct determination. That is correct, Your Honor. In the Said court, the Said case was determined on its merits. And even despite the fact that it was determined on its merits, the court found that it couldn't provide Ms. Said any meaningful relief because it couldn't order the Attorney General to act on her application. In this case, as the Court noted, the decision was that the – that Mr. Bellaharo was subject to removal. And because he was subject to removal, the Attorney General could not act as a statute in its plain language prohibits the Attorney General from doing. Now, of course, we would – I certainly don't want to bog down the Court on her own arguments. But we do believe that while the statute may tell the Attorney General what to do, we do suggest that the statute is ambiguous as to what district courts can do. And in that regard, we do believe that the Court could go outside the plain language of the statute. So, you know, it's a very difficult thing to do and one to be done very carefully and look at the legislative intent. And I think the legislative intent in this case – Kagan. Well, the statute seems awfully clear to me. I mean, it confers – Are you saying there's no jurisdiction? It confers jurisdiction. I'm surprised that one wants to argue out of what appears to be quite plain. I do think that the alternative argument that we made is one that is probably the most reasonable, most common-sense approach to these types of cases, and that is that the – what kind – if the district court does have jurisdiction, which I understand that this Court is – you know, it's difficult to go beyond the plain language of the statute. But what kind of meaningful relief, again – How can we deprive a district court, hold that there's no jurisdiction, based on our view of legislative history, when all the tools of statutory construction say you – and if you're going to take jurisdiction away from the courts, you have to do it explicitly? Your Honor, I understand what the Court is saying, and I, too, you know, somehow grapple with that, but the – all the language in regards to statutory construction also say that if following the plain language of the statute will result in absorbed – observed results. Okay. Well, let's take some absurd results. The statute says you've got to appeal a denial of naturalization within 120 days. If the court doesn't have jurisdiction, where does that review occur? Your Honor. I mean, you initiate removal proceedings and there's no – then you're completely wiping out the naturalization review. And in this type of case. Right. But, okay. That's the one example. Let's take another example. You take the example of somebody where the determination – it would be a very strange case, but the determination where the Attorney General's determination that the person was in removal proceedings was actually incorrect. What review is that? In other words, you would say that there's no jurisdiction to review an incorrect determination by the Attorney General finding that the person was in removal proceedings. Your Honor, what we're saying is that district courts in this case do have review, but the reviews – when the review is limited, when someone is subject to removal proceedings, I do think in those cases, although the plain language, you know, talks about the Attorney General, I do think because of the 40-year history, the priority  circumstances allow review. None the less. Right. So that's who you say, well, let's go to non-legislative history and find jurisdiction in that case, but not this. I mean, it just seems to me it's such a stretch for your argument. It's a very difficult argument. Well, I mean. Why do you mean it? I just don't understand it. Why are you making it? I don't understand. Why do you have a problem with what I outlined? Oh, absolutely. No problem. Well, then why try to argue for something that's going to necessarily lead you into A thicket. No, Your Honor. A big mess. I mean, it's a Hotel California, right? You can check, you know, the removal proceedings, check out any time you like, but you can't leave, you know. No. We do agree with the Court's analysis, Your Honor's analysis that you first started off, and that is the reason why we made the alternative argument in our briefs. And as the Court knows, the Apicorina Court also, in a very slightly different way, also reached that same conclusion as well as the Zaid Court. And so we do believe that, yes, if the Court finds that the district court does have jurisdiction, what kind of review can they give Mr. Bellaharo? And what's the answer to that? I don't think they can give any kind of review to or any meaningful relief to Mr. Bellaharo because they cannot order the Attorney General to act contrary to the law. The Attorney General is prohibited from ---- Stuck by removal proceedings. Correct, Your Honor. If I could just ---- Well, it's meaningful review, but it's of a different decision. I'm so sorry, Your Honor. It's meaningful review. Meaningful review, yes, Your Honor. But it's a meaningful review of the decision, the Attorney General's decision to deny the application on a non-merits grounds, right? Correct, Your Honor. Yeah. And if I just may address the matter of cruise situation, and I don't know if the Court needs any further redress, but we do agree with the, Your Honor, in that matter of cruise was decided at a time when naturalization or district courts sat as naturalization courts and had authority to grant naturalization. It was also decided in 1975 when that was available to the district courts. And in its statement, it kind of made an argument that district courts had the power to make these prima facie determinations. But, again, I don't believe an administrative agency can confer jurisdiction on a district court. And while matter of cruise has not been overturned, it's because the issue really hasn't been right before the Board to address that. If the Court doesn't have anything else, we would submit on our brief. Thank you, Counsel. Thank you so much. You didn't ask to do that many times, Counsel. I'm sorry. The case just argued is ordered submitted. Keep going. Sure. Darnell Washington v. Fred Brown.
judges: Trott, Rymer, Thomas